USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/20/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA ANN THOMAS,

Plaintiff,

-against-

TIMOTHY CAWLEY and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

Defendants.

No. 26-CV-4581 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Melissa Ann Thomas ("Plaintiff"), proceeding *pro se*, invokes the Court's federal question jurisdiction, asserting that Defendants Consolidated Edison Company of New York, Inc. ("Con Edison") and its Chairman and CEO Timothy Cawley (collectively, "Defendants") violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment by terminating electrical service to her residence for nonpayment. One month after filing the Complaint, Plaintiff filed an "answer and emergency application" requesting preliminary injunctive relief (the "Motion").[1] (ECF No. 12.)

For the following reasons, Plaintiff's Motion is DENIED.

## FACTUAL BACKGROUND

The Complaint, as written, does not offer a cohesive timeline of the events giving rise to this action. Instead, the Complaint jumps between various dates and events, making it difficult for the Court to construe the allegations in Plaintiff's favor. Nor does the Complaint contain sufficient

[1] The Court refers to the parties' motion papers as the following: (1) Plaintiff's memorandum of law in support of her Motion, ECF No. 12 ("Pl. Mem."); and (2) Defendants' memorandum of law in opposition, ECF No. 19 ("Defs.' Opp.").

factual allegations for the Court to determine Plaintiff's status with respect to the residence in dispute. With that said, the following background is drawn from the Complaint and Motion papers, and the Court accepts the allegations as true and draws all reasonable inferences in Plaintiff's favor.

Plaintiff resides in Mount Vernon, New York. (Compl. at 3.) By March 2026, Plaintiff was receiving electrical service at a residence located in Mount Vernon. (*Id*. at 32.) Con Edison, a New York utility corporation, provides the residence's electrical services. (*Id*. at 3, 5.) Defendant Timothy Cawley is Con Edison's Chairman and CEO. (*Id*. at 4.) This action arises from a dispute regarding Plaintiff's responsibility for charges reflected on her Con Edison account. (*Id*. at 5–6.)

On March 31, 2026, Con Edison sent Plaintiff a "final turn-off notice," informing her that "[her] payment agreement ha[d] been cancelled" due to nonpayment. (*Id*. at 32.) Plaintiff owed Con Edison approximately $8,922.67. (*Id*.) According to Plaintiff, however, the account balance on the final turn-off notice did not belong to her. (*Id*. at 5–6.) Instead, she alleges that Con Edison improperly transferred or charged all or part of a former tenant's utility debt to her account. (*Id*.) Plaintiff further alleges that she never agreed to assume the former tenant's utility debt and that Con Edison has failed to produce documentation, such as a contract, establishing that she was legally responsible for those charges. (*Id*.)

On May 4, 2026, Con Edison sent another final turn-off notice, informing Plaintiff that her electrical service would be discontinued unless she paid an outstanding balance of approximately $8,500.22. (*Id*. at 10.) The notice included a section titled "Deferred Payment Agreement," which provides, in relevant part: "If you are unable to pay the overdue bills and/or required deposit in full, call us to see if we can work out an [installment] plan you can afford." (*Id*. at 11.) In response, on May 8, 2026, Plaintiff wrote to Con Edison stating that she was "refusing to pay" the outstanding balance. (*Id*. at 9.) Plaintiff informed Con Edison that the outstanding balance was

"dishonored" due to Defendants' failure to "pay off any of the public debt" and for "unlawfully redirect[ing] ill-gotten gains into private corporate accounts through embezzlement, theft by deception, [and] fraudulent conversion[.]" (*Id.*)

On June 1, 2026, after Plaintiff did not pay the outstanding balance, Con Edison disconnected electrical service to Plaintiff's residence. (Pl. Mem. at 2.)

**PROCEDURAL HISTORY**

The same day Con Edison disconnected Plaintiff's electrical service, Plaintiff commenced this action. (ECF No. 1.) On June 18, 2026, Defendants filed a pre-motion conference letter seeking leave to file a motion to dismiss the Complaint. (ECF No. 9.) The Court granted Defendants' request on June 22, 2026, and set a briefing schedule. (ECF No. 11.) On July 2, 2026, approximately one month after commencing this action, Plaintiff filed the Motion seeking an order directing Con Edison to immediately restore electrical service to Plaintiff's residence while this action is pending. (ECF No. 12.) Pursuant to the Court's Order, (ECF No. 13), Defendants opposed the Motion on July 17, 2026. (ECF No. 19.)

**LEGAL STANDARD**

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "A party seeking a [TRO or] preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood

of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

With respect to the level of persuasion required to satisfy the first factor, courts have distinguished between motions seeking a prohibitory injunction as opposed to those seeking a mandatory injunction. Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," that party "must meet [a] more rigorous standard." *Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo."). The moving party must establish a "'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of injunctive relief. *Tom Doherty Assocs., Inc.*, 60 F.3d at 34.

## DISCUSSION

Plaintiff seeks a temporary restraining order and preliminary injunction directing Con Edison to immediately restore electrical service to Plaintiff's residence while this action is pending. (Pl. Mem. at 1.) Because Plaintiff seeks to alter, rather than preserve, the status quo, the Court evaluates the Motion under the heightened standard applicable to mandatory injunctive relief.

### I. Plaintiff Is Unlikely to Succeed on the Merits

The Court first considers whether Plaintiff's claims against Defendants are likely to succeed on the merits. On its face, the Complaint does not expressly invoke 42 U.S.C. § 1983. (Compl. at 2.) Rather, Plaintiff alleges only that Defendants violated the Due Process and Equal

Protection Clauses of the Fourteenth Amendment by terminating electrical service to her residence. (*Id.*) Because Plaintiff proceeds *pro se*, the Court construes her pleadings liberally and interprets them to raise the strongest arguments they suggest. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). The Court therefore construes the Complaint as asserting Plaintiff's Fourteenth Amendment claims pursuant to Section 1983. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 316 (S.D.N.Y. 2007) (explaining that "[a] proper statutory vehicle by which [the] plaintiff could bring" due process and equal protection claims against a public entity and its employees "is a [Section] 1983 claim"); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (stating that "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere") (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012) (same). "[M]ere conclusory allegation[s] that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Con Edison, although a utility regulated by the state, "is not a state actor for Section 1983 purpose." *Thomas/Smith v. Consol. Edison Co. of New York Inc.*, 2025 WL 1425757, at *1 (S.D.N.Y. May 15, 2025); *see also Jackson v. Metro. Edison*, 419 U.S. 345, 349 (1974) (a state regulated utility with a governmentally protected monopoly is not considered a state actor absent a showing of "a sufficiently close nexus between the State and the challenged action of the regulated entity to say that the action of the utility may be fairly treated as that of the state itself."); *Taylor v. Consol. Edison Co.*, 553 F.3d 39, 45 (2d Cir. 1977) (holding

Con Edison not a state actor despite "extensive intervention" by New York State in the area of utility termination); *Austin v. Consol. Edison Co.*, 788 F. Supp. 192, 196 (S.D.N.Y. 1992) ("Con Edison is not a government agency and is not itself subject to the constitutional restrictions plaintiffs would impose absent some suggestion . . . of joint action with government officials.").

The Complaint and Motion fail to provide any factual allegation suggesting joint action between Con Edison and the government. Plaintiff alleges only that Con Edison violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment by terminating electrical service to her residence. (*See* Compl. at 2; Pl. Mem. at 1–3.) These allegations, standing alone, do not demonstrate that Con Edison acted in concert with the government when terminating Plaintiff's electrical service at her residence. *See Ciambriello*, 292 F.3d at 324. Plaintiff therefore has not demonstrated a likelihood of succeeding on her Section 1983 claims.

The Court likewise carefully reviewed Plaintiff's Complaint and Motion to determine whether Plaintiff asserts any other cognizable federal cause of action sufficient to anchor federal subject matter jurisdiction. They do not. First, Plaintiff cannot rely on Section 5 of the Federal Trade Commission Act because that provision "does not provide for a private right of action." *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 598 (S.D.N.Y. 2022) (citing *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)). Second, although Plaintiff references the Fair Debt Collection Practices Act in an exhibit attached to the Complaint, she neither asserts a claim under that statute nor alleges facts suggesting that Defendants qualify as "debt collectors" within the meaning of the Act. (Compl. at 15–17.) Third, Plaintiff likewise cannot invoke federal question jurisdiction by relying on the Uniform Commercial Code or the "Accepted for Value" materials attached to the Complaint. (*Id.* at 19–25.) Those materials do not create a federal cause of action and instead appear to advance arguments commonly associated

with the sovereign citizen movement. This Court will not entertain such frivolous arguments. *See United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) (cleaned up) (noting that "so-called 'Sovereign Citizens' seek to clog the wheels of justice and delay proceedings so justice won't ultimately be done. They do so by raising numerous—often frivolous—arguments, many alleging that the Courts or the Constitution lack any authority whatsoever."); *Muhammad v. Smith*, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

Finally, to the extent Plaintiff attempts to assert additional claims for the first time in her Motion papers, she is barred from doing so.[2] *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in" opposition papers) (quoting *Vlad-Berindan v. MTA New York City Transit*, 2014 WL 6982929, at *5 (S.D.N.Y. 2014). The Court therefore concludes that Plaintiff has not demonstrated a clear or substantial likelihood of success on the merits of any federal claim asserted in this action.[3]

## II. Remaining Factors

The Court need not address the remaining factors governing Plaintiff's request for preliminary injunctive relief. "Where a party seeking a temporary restraining order fails to

---

[2] To the extent Plaintiff asserts breach of contract or negligence claims in her Motion, those claims derive from state law. (*See* Pl. Mem. at 2.) Plaintiff, however, does not allege facts demonstrating that the Court has diversity jurisdiction over her state law claims. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Here, Plaintiff has not alleged facts demonstrating complete diversity of citizenship between the parties because she fails to allege Con Edison's state of incorporation or principal place of business. (Compl. at 3–4.) The Court therefore lacks diversity jurisdiction over Plaintiff's state law claims.

[3] Con Edison also argues that dismissal is warranted under the primary jurisdiction and filed-rate doctrines. (Defs.' Opp. at 7.) The Court, however, need not reach those arguments because its conclusion that it lacks federal subject matter jurisdiction is dispositive. *See S.A.M. Mgmt. Co. v. Consol. Edison Co. of New York, Inc.*, 2023 WL 5935691, at *6 (S.D.N.Y. Sept. 11, 2023).

establish a likelihood of success on the merits, 'there is no need to address the other prongs of the analysis.'" *Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)). Thus, the Court need not proceed through the remaining factors.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a temporary restraining order and preliminary injunctive relief is DENIED. The Court will address the Complaint after briefing on Defendants' anticipated motion to dismiss is complete. The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on ECF and to note service on the docket.

SO ORDERED.

Dated: July 20, 2026
White Plains, NY

__________________________________
Nelson S. Román, U.S.D.J.